IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CASING SERVICES & EQUIPMENT, INC., | § | CASE NO. 10-36130-H1-11 |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

# WITNESS LIST & EXHIBIT LIST OF ANDRA VANARSDEL

Andra Vanarsdel files this Witness List & Exhibit List for the evidentiary hearing on *Andra Vanarsdel's Motion for Reimbursement of Administrative Expenses* (Doc. No. 186), scheduled to be heard on August 5, 2011 at 10:30 a.m.

## WITNESS LIST

| | |
|---|---|
| 1. | Andra Vanarsdel |
| 2. | Lisa Vanarsdel |
| 3. | Margaret M. McClure |
| 4. | Any witness designated or called by any other party |
| 5. | Any witness necessary to rebut the testimony of any witnesses designated or called by any other party |

## EXHIBIT LIST

| Ex. No. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Transcript of hearing(s) held on August 23, 2010 re Motion to Authorization to Enter Into Insurance Premium Financing | | | | |
| 2 | Financial Records of Debtor showing receipt of payments from Andra Vanarsdel | | | | |
| 3 | Andra Vanarsdel's Motion for Reimbursement of Admin. Expenses | | | | |

Respectfully submitted,

DYLEWSKI & ASSOCIATES, P.C.

By: /s/ Dennis M. Dylewski
DENNIS M. DYLEWSKI
Attorney-In-Charge
State Bar No. 06325750
Southern Dist. No. 493
J. KYLE TREADWAY
State Bar No. 24054561
Southern Dist. No. 870993
550 Westcott, Suite 220
Houston, Texas 77007
Telephone: (713) 751-0077
Facsimile: (713) 751-0080
E-mail: dmdylewski@sbcglobal.net

*Attorneys for Andra Vanarsdel*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of July 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to all counsel and parties of record.

/s/ Dennis M. Dylewski
Dennis M. Dylewski

IN THE UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-36130-H1-11 |
| | § | MCALLEN, TEXAS |
| CASING SERVICES & EQUIPMENT | § | MONDAY, |
| INC., | § | AUGUST 23, 2010 |
| DEBTOR. | § | 1:31 P.M. TO 5:52 P.M. |

**HEARING**

BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

FOR DEBTOR: SEE NEXT PAGE

FOR CREDITORS: SEE NEXT PAGE

COURT RECORDER: CANDY JONES

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
Tel: 281-277-5325 ▼ Fax: 281-277-0946
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Exhibit 1

**TELEPHONIC APPEARANCES:**

FOR THE DEBTOR: MARGARET MAXWELL MCCLURE, ESQ.
ATTORNEY AT LAW
909 Fannin, Suite 3810
Houston, TX 77010
713-659-1333

DEBTOR REPRESENTATIVE: MS. LISA VANARSDEL

FOR JPMorgan: JACKSON WALKER LLP
By: Bruce J. Ruzinsky, Esq.
1401 McKinney, Suite 1900
Houston, TX 777010
713-752-4204

FOR U.S. TRUSTEE: U.S. TRUSTEE
Nancy Lynne Holley, Esq.
515 Rusk Street, Suite 3516
Houston, TX 77002
713-718-4650

**HOUSTON, TEXAS; MONDAY, AUGUST 23, 2010; 1:31 P.M.**

**(Telephonic appearances. Judge Isgur is in McAllen.)**

**THE COURT:** All right, we're here in the Casing Services & Equipment, Inc. case. I've got, what looks like three appearances on the phone. The Case Number is 10-36130. I'm going to go ahead and activate all three phone lines and then we'll take appearances.

All right, who do we have representing the Debtor today?

**MS. VANARSDEL:** Lisa Vanarsdel.

**THE COURT:** I'm sorry. Could you repeat that a little louder, please?

**MS. VANARSDEL:** Lisa Vanarsdel.

**THE COURT:** Who is counsel on the phone?

**MR. RUZINSKY:** Your Honor, Bruce Ruzinsky, R-U-Z-I-N-S-K-Y, representing the pre-petition lender JPMorgan Chase.

**THE COURT:** Thank you.

**MS. HOLLEY:** Nancy Holley representing the United States Trustee.

**THE COURT:** Any other appearances today? Ms. Vanarsdel, do you know where your lawyer is today?

**MS. VANARSDEL:** I just spoke to her not too long ago. I know she wasn't feeling well, but we had hung up and she was supposed to be calling right in, so I don't know.

**THE COURT:** All right. Let's give her a minute to get on the phone.

And do we have anyone here on behalf of the Tubbs' parties?

**MS. VANARSDEL:** I think they've withdrawn their objection, Your Honor.

**THE COURT:** All right. In case there's something wrong with our phone system, I'm going to un-mute all the lines and we'll see if we have Ms. McClure.

Ms. McClure, are you on the phone?

All right. Well let me hear from Mr. Ruzinsky and Ms. Holley and see where they are on this.

**MR. RUZINSKY:** Your Honor, Bruce Ruzinsky on behalf of JPMorgan Chase. We don't have any opposition to the Motion.

**MS. HOLLEY:** Your Honor, the U.S. Trustee, of course, wants the Debtor to have this insurance. Because of the nature of their operations, I don't think they can continue without it. I don't know what "BA" means on the insurance. I'm hoping that's "business assets," but I'm not sure.

There are three types of insurance: general liability, workers comp, and BA. Aside from that we don't oppose the Motion.

**THE COURT:** All right. I think may be we now

have -- go ahead who's on the phone?

Ms. McClure. is that you?

**MS. MCCLURE:** Margaret McClure.

**THE COURT:** Go ahead, Ms. McClure.

**MS. MCCLURE:** Margaret McClure, Your Honor, on behalf of Casing Services & Equipment, Inc. I believe I'm still proposed counsel.

**THE COURT:** All right. Ms. McClure, it looks like that the objection by the Tubbs has been withdrawn.

**MS. MCCLURE:** That is correct.

**THE COURT:** Mr. Ruzinsky does not oppose. Ms. Holley, I believe, has one question and then I have one question.

**MS. MCCLURE:** Yes, sir.

**THE COURT:** I'll let Ms. Holley repeat her question and then I'll you mine. I'll let you see how we can answer that, given the nature of the telephonic hearing.

**MS. MCCLURE:** Okay.

**THE COURT:** Go ahead, Ms. Holley.

**MS. HOLLEY:** Ms. McClure, my only question was, what type of insurance is BA?

**MS. MCCLURE:** BA?

**MS. HOLLEY:** Yes, ma'am. You've got workers comp, WC; you've got GL, general liability; and then there's BA. Is that business assets?

**MS. VANARSDEL:** I believe it's "business auto."

**MS. MCCLURE:** Business Auto. I believe that's Lisa Vanarsdel on the line with us.

**MS. VANARSDEL:** Correct.

**MS. MCCLURE:** And I hope that was okay, Your Honor, that she called in.

**THE COURT:** Yes.

**MS. MCCLURE:** And we believe we answered that at a hearing, Ms. Holley, that I don't think you were at. Ms. Vanarsdel testified to that. I think she and Judge Isgur had some dialogue about BA.

**MS. HOLLEY:** Okay.

**THE COURT:** All right. I was concerned because the Debtor's original schedule showed the Debtor had about $20,000 in the bank. This is over a $200,000 down payment. I want to know where the money is going to come from to make the down payment.

**MS. MCCLURE:** Your Honor, at the last -- at the cash collateral hearing, I believe Ms. Vanarsdel told us at that point, which was certainly a few days after petition date, they had over $100,000 in the bank. One portion of this money to make up this payment, Mrs. Andra Vanarsdel, there is an accounts receivable on the books from her. She is paying that $40,000 back to the company. And then they will be okay.

**THE COURT:** So, Ms. Vanarsdel, how much cash do you all have in the bank right now?

**MS. VANARSDEL:** Right now in the bank I have, with that $45,000 -- I can't find my notes right now -- about 160 I believe with that. And then we are -- we have a sale of equipment that will pay for the remainder.

**MS. MCCLURE:** And Your Honor, I looked back at the Articles of Incorporation and certainly the business of this company, with their $8.7 million in equipment, part of their business is selling equipment as an ordinary course.

**THE COURT:** What kind of equipment are you selling, Ms. Vanarsdel?

**MS. VANARSDEL:** There are six power units.

**THE COURT:** And why are they being sold?

**MS. VANARSDEL:** They are not used at this point and we are trying to gather the rest of the money for the down payment and the first payment of the total that we owe to the finance company right now.

**THE COURT:** Are they being sold to a normal customer or are they being sold in some sort of an auction process? How are they being sold?

**MS. VANARSDEL:** No, sir. It's just a normal customer of ours.

**THE COURT:** And who has a lien on that equipment?

**MS. VANARSDEL:** I don't know -- Margaret?

**MS. MCCLURE:** Well, Your Honor, is Bruce Ruzinsky on the line with us?

**MR. RUZINSKY:** Yes, I am.

**MS. MCCLURE:** They have -- they've financed several of our vehicles and do have a blanket lien, if you will. And certainly that's something prior to doing that, that Mr. Ruzinsky and I have to speak to.

They have a lien, if you will, against $8.7 million worth of assets. Whereas, our debt with them -- our interest carried on our debt is only $3900 a month. So we have to get Chase's approval to do this.

**MR. RUZINSKY:** Your Honor, it's Bruce Ruzinsky. I don't know about the $8 million plus of assets, but I'm happy to visit with Ms. McClure once I get some details about the proposed sale and see if we can get on the same page with respect to it.

**MS. MCCLURE:** Right, our Schedule looks like 8.7 million in assets.

**THE COURT:** On the Cash --

**MS. MCCLURE:** We owe 1.5 million in debt.

**THE COURT:** All right.

**MS. MCCLURE:** And not just to Mr. Ruzinsky.

**THE COURT:** On the Order authorizing the use of cash collateral, there was a certain amount allocated towards insurance. Is this down payment in addition to the

amount shown in the cash collateral? Or is it --

**MS. MCCLURE:** It is. If I recall, Mr. Ruzinsky reminded me at the time of our Cash Collateral hearing, even though it may not -- the down payment aspect of it might not have been on the cash collateral order, we all, we took a break while you left the room and we consented or announced to the Court that Chase consented to the use of the funds to pay the down payment regardless of whether or not it was in the budget.

**MR. RUZINSKY:** There is a consent that -- Chase has consented to the payment of what's required to cover insurance here. I know that there was some discussion at that hearing about coming back to the Court soon with different insurance arrangement which would involve I think, a couple hundred thousand dollars less of cost.

**MS. MCCLURE:** Right.

**MR. RUZINSKY:** My understanding is that that did not happen --

**MS. MCCLURE:** Because of the Chapter 11, everybody ran.

**MR. RUZINSKY:** And so we are with the existing insurance and my understanding also from Ms. McClure is that rather than what was originally contemplated, I think, spreading the cost over maybe nine or ten months, the cost is spread over seven months here so that the monthly payment

and I think maybe even the down payment is higher than was originally expected.

**MS. MCCLURE:** That is correct.

**THE COURT:** What I'm worried about is the following: If we divert $200,000 to paying a down payment on insurance and there is roughly, from what you're telling me, $70,000 that's coming in from a non-budgeted collection of a receivable and a non-budgeted sales of some equipment, there's then not enough money to pay the on-going expenses of the business. And I want to know where the money is going to come from to pay the other on-going expenses.

If you spend every dime on insurance, are you then not going to pay for fuel or labor or other things that need to be paid for?

**MS. MCCLURE:** Our problem today, Your Honor, is because of the type of business that we're in, where we are required to have insurance, if this Order is not granted today, if this Motion is not granted today, we have to close the doors tonight.

**THE COURT:** I understand that. But what I want to know is: Will you have enough money to pay the bills with next week? And I'm not going to do something today, that dooms the business to failure next week. If it's going to fail, I'll have it fail today. I want to know if there's money if we do this.

**MS. MCCLURE:** Ms. Vanarsdel, Lisa, do you know what the accounts receivable are that are expected to come in this week?

**MS. VANARSDEL:** I am -- I looked at that just earlier and I'm expecting probably, based on the way the -- well, they'll pay, I'm looking at probably collecting may be 50 to $70,000 this week.

**THE COURT:** That was basically the amount you forecasted would be collected this week, right?

**MS. VANARSDEL:** I'm sorry?

**THE COURT:** That's what was shown in the cash collateral budget that we did on August 2nd?

**MS. VANARSDEL:** Since then, I know last week I made deposits in the amount of probably about $80,000 last week. So, I mean, I have received money then since we were in front of you.

**THE COURT:** Ms. McClure, how am I going to figure out whether paying this amount today means that next week the Debtor fails or doesn't fail? How can I understand that better?

**MS. MCCLURE:** If -- the bottom line is, Your Honor, if we have to shut down today, we have $8.7 million worth of equipment that we would have to go into a liquidation mode, if we can't continue. But we can't continue without the insurance. So we will fail if we don't

get this Order approved.

**THE COURT:** My question is, will you fail if you do get the order approved?

**MS. MCCLURE:** Well, if nothing else, we will have all of the equipment that needs to be liquidated, plus insured until it's liquidated.

**MS. HOLLEY:** With this -- Nancy Holley representing U.S. Trustee. What is the rationale of the insurance company, if you know, Ms. McClure, to very high first payment?

**MS. MCCLURE:** The $204,000 cash down payment?

**MS. HOLLEY:** Uh-huh.

**MS. MCCLURE:** It was $117,000. When they found out about the Chapter 11, that's what exactly what occurred. They wanted more up front and they wanted seven payments versus nine. I looked at the -- I'm comparing the two.

And Ms. Vanarsdel, that is your understanding as well, correct?

**MS. VANARSDEL:** Yes.

**MS. HOLLEY:** And the first quote was received or requested after your bankruptcy filing?

**MS. MCCLURE:** We had an emergency hearing to get it approved as a first-day motion. So I don't know how long we had it beforehand. And then as Ms. Vanarsdel and the agent were out shopping for other insurance and we were

optimistic at that time to get off of the $585,000 to get a $200,000 savings. Once he started shopping and once he started talking back with Liberty Mutual, Chapter 11 scared everyone off and Liberty Mutual then is penalizing us for being in Chapter 11 and changed their premium finance agreement. And basically said take it or leave it.

**THE COURT:** How much of the premium finance is for liability coverage and how much is property coverage?

**MS. MCCLURE:** Property coverage is 173,000 rounded up from the last page. General liability is 53,000 and some change. Workers comp is the kicker, it's 360,000.

**MS. HOLLEY:** Did Liberty Mutual offer any type of an employee hazard insurance as opposed to workers comp?

**MS. MCCLURE:** I don't know that the industry will allow it, Nancy.

Do you know, Lisa Vanarsdel?

**MS. VANARSDEL:** No, they will not.

**MS. HOLLEY:** Talking about the industry or the union? Because the industry, we get it all the time. The union, and part of this is in Oklahoma, I don't know about Oklahoma, but is it the union that won't allow it or is -- do you have a union shop in Oklahoma?

**MS. VANARSDEL:** No, we do not. We have master service agreement so the customers provide to us stating what kind of coverages we must carry in order to do work for

them.

**MS. HOLLEY:** And they specify workers comp?

**MS. VANARSDEL:** Yes, ma'am.

**MS. HOLLEY:** Rather than occupational hazard?

**MS. VANARSDEL:** Yes, ma'am.

**MS. HOLLEY:** So what is the status on keeping the Oklahoma facility open?

**MS. MCCLURE:** We've had a lot of discussions about that. Right now, most of our business is up there even though it's more costly business.

Right, Lisa?

**MS. VANARSDEL:** Yes, that's correct.

**MS. MCCLURE:** I say things and then I need confirmation.

**MS. HOLLEY:** What is the percentage of business that's in Houston versus Oklahoma?

**MS. VANARSDEL:** Looking at my receivables, my Houston location, where my current receivables are about 270,000; and my current Oklahoma, I'm doing the math right now, and my Oklahoma receivables are about 337,000. So, over half of our receivables are in Oklahoma.

**THE COURT:** Insurance is in place today, correct?

**MS. MCCLURE:** I didn't hear you.

**THE COURT:** You have insurance in place today. Is that right?

**MS. MCCLURE:** Yes, sir, until -- and it will cancel today.

**THE COURT:** Well, that's what I want to understand. Who do you have the insurance with and how are they going to cancel it without an order of the Court?

**MS. VANARSDEL:** Am I allowed to answer that?

**THE COURT:** Sure.

**MS. VANARSDEL:** We are currently in cancellation mode. They've been on the policy since July 1st and haven't received money. So we are currently in cancellation mode.

**THE COURT:** I don't know what it means to be in cancellation mode.

**MS. VANARSDEL:** The policy is going to cancel because of non-payment.

**MS. HOLLEY:** Does that mean that they had given you sufficient notice of cancellation?

**MS. VANARSDEL:** Yes, we had received notice of cancellation.

**THE COURT:** For non-payment?

**MS. MCCLURE:** They extended the cancellation notice date.

**MS. VANARSDEL:** Yes.

**THE COURT:** And this is for non-payment?

**MS. MCCLURE:** Non-payment.

**THE COURT:** So they sold you policy on credit and

now they want to cancel the policy for failure to make a payment?

**MS. MCCLURE:** Correct.

**THE COURT:** Well, can they do that under Section 362?

**MS. MCCLURE:** Let me look.

**THE COURT:** Mr. Ruzinsky, what do you think?

**MR. RUZINSKY:** I'm not sure, Judge. I'm not sure about the answer to that question.

**MS. MCCLURE:** We have cancellation notices all the time because we -- the U.S. Trustee and for notice purposes and then I get a call from U.S. Trustee and we pay the payment and we don't get cancelled. I know that they all try it. Whether or not they're violating the law, I don't know the answer.

**THE COURT:** I'm not sure. What I know I need some information. I've got to have something that shows me that authorizing this payment doesn't cause the Debtor to fail. And basically I need a week-by-week forecast for about a month to tell me you can make it.

**MS. MCCLURE:** We're -- actual protection because we're actually sending Mr. Ruzinsky the weekly receipts, but so we can give you a week-to-week forecast, as well.

**THE COURT:** It seems to me that I've got to have that that shows forecast money in, forecast money out,

assuming that you pay this $206,000 whatever it is, down payment, are you going to have post-petition bills you can't pay? Because if you are, I don't know why we'd do this.

**MS. MCCLURE:** How quickly does the 500,000 in the accounts receivable come in, Lisa?

**MS. VANARSDEL:** Well, as we said earlier, oilfield does pay slow, but we are experiencing -- we're currently receiving more money because of the increased business. So, I can tell you that on my 60-day -- well, my 30-days, I'm at $197,000 in my receivables; 60 is at 46,000 and 90 is at 24,000.

**THE COURT:** Right. But you've got bills you've got to pay out of that, right?

**MS. VANARSDEL:** Yes, sir.

**THE COURT:** Yeah, I need to see what you're going to get and what you're going to pay and I want to know that at the end of each day we have a positive cash balance.

Does anybody want to argue that I shouldn't be looking at that? Go ahead. I mean, I'll listen to you, but I think I've got to do that to do my job.

**MS. MCCLURE:** And we don't mind doing that, Your Honor. It's just that, like I said, we have to shut down tonight if we can't get this insurance.

**THE COURT:** What time will you be ready with it.

**MS. MCCLURE:** One person out on the job without

the workers comp.

**THE COURT:** What time will you be -- first of all, I'm not that they can cancel without violating the stay. But I'm not sure they can't. But what time will you be ready? I'll give you a hearing when you're ready for it.

**MS. MCCLURE:** What time would we be ready with a four-week forecast?

**THE COURT:** Right.

**MS. MCCLURE:** I can have it done this afternoon.

**THE COURT:** If you're asking me, I'll hold the hearing when you all are ready for it. I don't want the Debtor out of business if they shouldn't be.

**MS. MCCLURE:** Ms. Vanarsdel, it's up to you. How quickly can you get a four-week forecast showing estimated -- an honest estimation of money coming in and bills needing to be paid over the next four weeks?

**MS. VANARSDEL:** I can get started on it right now and --

**MS. MCCLURE:** How long would it take you to get it done?

**MS. VANARSDEL:** Two, probably two hours or so.

**THE COURT:** Okay. We'll continue the hearing until 5:30 this afternoon. Will that work for everybody?

**MR. RUZINSKY:** Yes, Your Honor.

**MS. HOLLEY:** Yes, sir.

**THE COURT:** Okay, we'll be able to get an order docketed by 5:30 if that's when it gets issued. Go ahead and file that of record so that I've got it to look at here in McAllen. And we'll resume the hearing at 5:30.

**MS. MCCLURE:** All right, 5:30 we will call back in. Meanwhile I will upload the four-week projection.

**THE COURT:** Yes, ma'am. Thank you.

**MS. MCCLURE:** Is that correct?

**THE COURT:** All right, we'll talk to you all then. Thank you.

**MS. MCCLURE:** Thank you, Your Honor.

**MR. RUZINSKY:** Thank you, Judge.

**MS. MCCLURE:** Lisa?

**MS. VANARSDEL:** Yes.

**MS. MCCLURE:** I think she -- you have a question for the Judge?

**MR. RUZINSKY:** It may be too late now.

**MS. VANARSDEL:** It's too late now.

**THE COURT:** I don't think it's too late. What do you want to know?

**MS. MCCLURE:** Didn't hear you.

**MS. VANARSDEL:** Were you asking me if I had a question?

**THE COURT:** What do you have?

**MS. MCCLURE:** Lisa, didn't you have a question?

**MS. VANARSDEL:** No. It was selling the equipment but we -- it had already been addressed.

**THE COURT:** I'll talk to you all at 5:30.

Thank you.

**MR. RUZINSKY:** Thank you, Judge.

**MS. MCCLURE:** Thanks.

(Recess is taken from 1:54 p.m. to 5:33 p.m.)

**THE COURT:** All right, we're going to call Casing Services & Equipment, Inc. It is 10-36130. And activate the various phone lines and we'll take appearances.

All right, who do we have from Dallas on the phone? Oh, hold on. We're going to go ahead and call 10-36130, Casing Services & Equipment. I've activated all the telephone lines. Can we go ahead and appearances starting with Dallas appearance?

**MR. RUZINSKY:** Good afternoon, Your Honor. Bruce Ruzinsky with Jackson Walker, actually here in Houston, but my firm location in Dallas shows up that way. I represent JPMorgan Chase.

**THE COURT:** All right, then we have a 281-590 number?

**MS. VANARSDEL:** Yes, sir. That's Lisa Vanarsdel and Andra Vanarsdel from Casing Services.

**THE COURT:** Thank you. And then we have the U.S. Trustee's number that I recognize. Who do we have from

there?

**MS. HOLLEY:** Nancy Holley representing the United States Trustee.

**THE COURT:** Do we have any other appearances today?

All right, let me take a look at the notice of four-week income and expense that got filed. I've not looked at it before now.

**(Pause.)**

**MS. HOLLEY:** Your Honor, did you get something uploaded?

**THE COURT:** I did. I received Document 58, but it doesn't really look like what it purports to be. It's entitled "Notice of Four-Week Income and" --

**MS. HOLLEY:** Right. Okay, I just got it.

**THE COURT:** And it's one page. It shows reviews 58,408.25, expenses of 71,196. That's all that is shown for a loss over the four-weeks of $12,800.

**MS. VANARSDEL:** Sir, may I speak?

**THE COURT:** Yes, ma'am. Go ahead.

**MS. VANARSDEL:** What I had submitted was an Excel spreadsheet and at the bottom I had it broken out by the four different weeks. So the week that you're looking at is actually the current week we're in. Over the four weeks, we had positive $13,065.94.

**THE COURT:** I think Ms. McClure just joined.

Ms. McClure, where's the rest of the document?

(No audible response.)

Ms. McClure you're live, go ahead.

**MS. MCCLURE:** Judge Isgur, it's Margaret McClure. I'm sorry I'm not as good in Excel as you are. I did just file an amended one which has the four pages.

**THE COURT:** All right.

**MS. MCCLURE:** I apologize. All that kept coming up was the first page.

**THE COURT:** Okay. I've got the amended one.

**MS. MCCLURE:** Thank you. You have not yet been served out, it'll probably be here momentarily. I'm so sorry. It shows, and I will tell you, Judge, I added up the four pages and come up with a positive $13,065.94.

And keeping in mind, Your Honor, I know we have a couple of negatives in there, but some of the bills can be carried over to the next week.

**(Pause.)**

**THE COURT:** Ms. Holley and Mr. Ruzinsky, have you all had an opportunity at this point to receive the document?

**MS. HOLLEY:** I'm looking at the new upload and trying to understand it.

**(Pause.)**

**THE COURT:** Mr. Ruzinsky, what about you?

**MR. RUZINSKY:** Your Honor, I'm looking at it now, as well. I assume that built in here is the assumption that the first down payment on insurance is made and that the insurance number is just for the next monthly payment.

Is that correct, Ms. McClure?

**MS. MCCLURE:** That is correct. And I will also tell you all this does not include jobs in progress or recent jobs. These are what we anticipate collecting on current accounts or a little bit older accounts receivable.

**THE COURT:** And this also doesn't include the $40,000 of equipment that you're selling, correct?

**MS. MCCLURE:** It does not include the equipment sales, that's correct.

**MS. HOLLEY:** Does it include the $45,000 from Ms. Vanarsdel?

**MS. MCCLURE:** Yes, it does.

**THE COURT:** It does include the 45 from Mrs. Vanarsdel?

**MS. MCCLURE:** She had taken out a loan from the company and she's paying it back.

**THE COURT:** But that's being used to pay the insurance premium. That's not being used to pay these future expenses, right? So the 94,878 does that include the

45 from her?

**MS. MCCLURE:** Is that right, Ms. Vanarsdel?

**MS. VANARSDEL:** Yes, sir. It was not a loan. But yes, sir, it does include that.

**THE COURT:** So we've counted that both as money to pay the insurance premium with and as money to pay future expenses with, right?

**MS. MCCLURE:** No, sir. Without the 45,000 we can make the insurance. Is that right, Ms. Vanarsdel?

**MS. VANARSDEL:** Say that again, please.

**MS. MCCLURE:** With the items that we're selling, I forwarded that list to Mr. Ruzinsky, we can cover the insurance without the 45?

**MS. VANARSDEL:** No, we needed the 45 to cover the insurance with the equipment sale.

**THE COURT:** So we've counted the 45 twice? Are the equipment sales in the revenues?

**MS. VANARSDEL:** No, sir, they're not.

**THE COURT:** So the 45 is counted twice. One is to pay insurance with and one is to pay future expenses with, right?

**MS. VANARSDEL:** Do you want me to answer that?

**THE COURT:** Yes, ma'am, please.

**MS. VANARSDEL:** I addressed the 45 earlier with paying the insurance. That would be the 45 and then the

sale of the equipment. But I did not mean to include it twice. I've got it included on week 8/23, that part of the 94,878.77.

**THE COURT:** Correct. So you've included it as part of the 94,878. You're going to take 45 of that 94,878 and pay insurance with, which is going to then leave you with roughly $50,000 to pay these expenses with. Which means that you'll have roughly $34,000 left at the end of that week. Is that correct?

**MS. VANARSDEL:** Yes, sir.

**THE COURT:** And then at the end of the next week, you will have a 90 loss against which you'll have 34 in cash. So you'll have about $56,000 left of negatives. If you defer bills, then you'll have 37 against the 56, you're still going to be short about 19. And then you're going to lose another 12, so you're now short about $31,000 by the end of the month if I let you pay the insurance -- unless I'm misreading this.

**MS. MCCLURE:** And again, Your Honor, this is not covering income from -- for what time period, Lisa? For the last two weeks?

**MS. VANARSDEL:** Well, this was only money that we were receiving in this time frame. This has nothing to do with the jobs that are going towards our receivables. Our current receivables are right now at about $600,000.

**THE COURT:** Ms. Holley, I just don't know how we make it on a cash basis for 30 days. I'm sorry, Ms. McClure. Tell me how we make it to get to the end of the month on a cash basis. Don't we just run out of cash?

**MS. MCCLURE:** Not if the jobs -- I mean, we have -- all right, if you minus the 45, we roughly have 50, we have 100, we have 150, we have $200,000 predicted to come in. But that's not on jobs that we have been doing that could be --

**THE COURT:** That money won't come in -- that money is going to come in next month.

**MS. MCCLURE:** -- $100,000 worth of accounts receivable.

**THE COURT:** Right. That money comes in next month. It doesn't come in this month.

**MS. MCCLURE:** It could come in this month. Casey Vanarsdel, all he has to make the phone calls for them to come in. The income -- the revenue on these four pieces of paper are conservative. These are the monies that they know will come in. This does not take into account the whole $600,000 worth of accounts receivable and the jobs that are in progress.

**THE COURT:** Let me hear from Ms. Holley and Mr. Ruzinsky.

**MS. HOLLEY:** I believe I'll go first. It is

really tight and I understand the situation we're in here, but and that's assuming that everything final, the sales and all that kind of stuff. I just think it's really tight.

Is there any possibility of the officers and directors contributing any additional funds to get us past this impasse?

**MS. VANARSDEL:** May I ask a question?

**THE COURT:** Yes, ma'am.

**MS. VANARSDEL:** Could it be done on a loan basis or would it be just --

**THE COURT:** It can be done on a loan --

**MS. VANARSDEL:** -- capital contribution?

**THE COURT:** It can be done on a loan basis, but you may not get paid back if the company goes under. But you can borrow money on an unsecured basis.

**MS. MCCLURE:** It would be an unsecured loan unless there was further application to the court, right?

**MS. VANARSDEL:** And what is the likelihood of us getting the approval to sell those power units? Because if we can sell those power units that would be almost $59,000 that we could possibly have in our hands as early as tomorrow, if that was approved.

**MS. HOLLEY:** Are those power units the same units that you've given notice to Mr. Ruzinsky about?

**MS. MCCLURE:** Correct.

**MS. HOLLEY:** That's already included?

**MS. VANARSDEL:** No, it's not already included.

**MS. HOLLEY:** Okay. All right. Bruce?

**MR. RUZINSKY:** Yeah, I guess what I've read, it looks about $55,000 was expected in and 59 even better. I've talked to my client and that's fine. We don't have a problem selling it. I think the only thing that we'd like to see and would really want to see in connection with the insurance financing is to make sure that on the certificate of insurance, Chase as lender, together with the U.S. Trustee, for notice purposes, would be listed on the insurance certificate as loss payees. But the sale of this property is fine from the bank.

And if it happens tomorrow, that's fine.

**THE COURT:** All right. Here's what I'm going to do. I'm authorizing the insurance arrangement. I'm going to authorize as part of the motion the sale of the bank's collateral with the banks consent to be applied to insurance.

Moreover, I'm going to authorize a loan from the shareholders of $40,000, which will be secured by a junior lien on the insurance policies.

This is such a large down payment, I suspect there's going to be a large amount of unearned premium at any time. I think it's fair if the officers and directors

want to put some money in, they can do that against the insurance policy itself.

The amount of the down payment has gone up so dramatically that ought to be on the premium. If the Debtor goes under and there's a refund, I don't see any reason why there shouldn't be a second lien to those shareholders and directors.

Does anybody have any objection to that arrangement?

**MS. HOLLEY:** No, Your Honor.

**MR. RUZINSKY:** No, Your Honor.

**MS. MCCLURE:** No, Judge.

**THE COURT:** Okay. Can we get an agreed order that's done that does those things? And can you all act on it without the written order? Do you need a written order tonight?

**MS. MCCLURE:** All we need is a written order for the insurance. Would you like me to email you the Word version of that order? Even if everybody needs it in writing.

**THE COURT:** The question is do you need it in writing or can you go ahead and perform under it based on the oral announcement so you all can then agree on the form of the Order with the other three things.

**MS. MCCLURE:** You've made the pronouncement,

that's good enough for me.

**MR. RUZINSKY:** Me, too.

**THE COURT:** Ms. Holley, are you okay on that?

**MS. HOLLEY:** Yes, sir.

**THE COURT:** As soon as you can --

**MS. MCCLURE:** Are you signing the insurance order, we're authorized to sell the bank's collateral. We'll add -- we'll make sure that Chase and, of course, U.S. Trustee are listed as loss payees or U.S. Trustee.

**MS. HOLLEY:** I just want to be a notified party.

**MS. MCCLURE:** Notified party. Mr. Ruzinsky's client, Chase, is listed as the loss payee and any shareholder loans or officer director loans will have a junior lien against --

**MR. RUZINSKY:** On the insurance policy.

**MS. MCCLURE:** -- on the policy. Does that work with you all, Ms. Vanarsdel?

**MS. VANARSDEL:** Yes, ma'am.

**THE COURT:** And will otherwise be unsecured.

**MS. MCCLURE:** Correct.

**THE COURT:** Okay. What I want you to do is you all agree on the form of that order, send an email to Ms. Dolezel as soon as it gets filed. I'll read it within an hour of when it gets filed and try and get it signed tomorrow. But in the meantime, you-all are authorized to

act under the oral pronouncement.

**MS. MCCLURE:** Okay. And you're going to go ahead -- can you docket the insurance order or not?

**MR. RUZINSKY:** Is it the insurance order that's going to be revised and submitted or is it a separate order?

**MS. MCCLURE:** Can't we have a second order regarding that, regarding the other issues? We have to have that order for the insurance carrier.

**MS. HOLLEY:** I think that was what he was asking you earlier is whether you could just act on it without the order or if you needed an order.

**MS. MCCLURE:** The insurance carrier is requiring this order. It's their language.

**THE COURT:** I don't have a problem doing two separate orders. We'll do this order and a separate order.

**MR. RUZINSKY:** Will that be a supplemental order or just a totally separate order?

**THE COURT:** Just do a supplemental order to it.

**MR. RUZINSKY:** Okay.

**MS. MCCLURE:** Perfect.

**THE COURT:** Okay, I will sign the order tonight. It may or may not hit the docket until in the morning. What time do you need to actually tender the order to them?

**MS. MCCLURE:** Well, it's 6:00 o'clock.

Ms. Vanarsdel?

**MS. VANARSDEL:** I'd say as soon as possible because they won't touch our money without the order.

**MS. MCCLURE:** Right.

**THE COURT:** Well. Okay. We'll get it -- I'm going to sign it tonight. It'll hit the docket very first thing in the morning. It might hit the docket tonight.

**MS. MCCLURE:** Okay. Thank you all so much and thank you for putting up with me not knowing how to merge four Excel spreadsheets into one document. I'm sorry.

**THE COURT:** Okay. Thank you.

**(Proceeding adjourned at 5:52 p.m.)**

* * * * *

***I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.***

***/s mhenry***

---

***JUDICIAL TRANSCRIBERS OF TEXAS, INC.***

***JTT INVOICE # 29204***

***DATE: JULY 27, 2011***

Casing Services & Equipment, Inc.

CASH RECEIPTS JOURNAL

REGISTER NO: CR-0690 BATCH NO: 02634

BANK: F DIP ACCOUNT DEPOSIT DATE: 08/25/10 DEPOSIT NO: 02634 DEPOSIT AMOUNT: 60,000.00

| CUSTOMER NUMBER | NAME | INVOICE NO. | CASH AMT APPLIED | DISCOUNT DATE | DISCOUNT AMOUNT | INVOICE BALANCE | CREDIT A/R | CREDIT MISC ACCNT |
|---|---|---|---|---|---|---|---|---|
| 00 - CASH | VANARSDEL | CHK: WIRE | | | | | | |
| | | GL: 24300 | 60,000.00 | | | | | 60,000.00 |
| | | POSTING TOTAL: | 60,000.00 | | .00 | | .00 | 60,000.00 |
| | | DEPOSIT 02634 TOTAL: | 60,000.00 | | .00 | | .00 | 60,000.00 |
| | | 08/25/10 TOTAL: | 60,000.00 | | .00 | | .00 | 60,000.00 |
| | | BANK F TOTAL: | 60,000.00 | | .00 | | .00 | 60,000.00 |
| | | REPORT TOTAL: | 60,000.00 | | .00 | | .00 | 60,000.00 |

Deposit 2634 Wire

POSTED

F 103

System Date: 08/30/2010 / 2:10 pm
Application Date: 08/25/2010

Page: 1
User: P01 / Lisa

Exhibit 2

Casing Services & Equipment, Inc.

CASH RECEIPTS JOURNAL

*REGISTER NO: CR-0690 BATCH NO: 02634*
*ACCOUNTS RECEIVABLE RECAP BY DIVISION*

DIVISION 00 MAIN DIVISION

| G/L ACCOUNT | DESCRIPTION | | DEBIT | CREDIT |
|---|---|---|---|---|
| 00108 | DIP ACCOUNT | | 60,000.00 | |
| 24300 | Andra Vanarsdel | | | 60,000.00 |
| | | DIVISION 00 TOTAL: | 60,000.00 | 60,000.00 |

**Daily Transaction Register**

**Casing Services & Equipment, Inc. (CSE)**

Postings For: 8/25/2010

| Source Journal | Account Number | Account Description/Posting Comment | | | Debit | Credit |
|---|---|---|---|---|---|---|
| CR-000690 | 00108 | DIP ACCOUNT | | | 60,000.00 | |
| | | VANARSDEL | CHK:WIRE | BTH:02834 | | |
| | 24300 | Andra Vanarsdel | | | | 60,000.00 |
| | | VANARSDEL | REF:WIRE | | | |
| | | | | Journal 000690 Totals: | 60,000.00 | 60,000.00 |
| | | | | Source CR Totals: | 60,000.00 | 60,000.00 |
| | | | | 8/25/2010 Totals: | 60,000.00 | 60,000.00 |
| | | | | Report Totals: | 60,000.00 | 60,000.00 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CASING SERVICES & EQUIPMENT, INC., | § | CASE NO. 10-36130-H1-11 |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

# ANDRA VANARSDEL'S MOTION FOR REIMBURSEMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO SECTIONS 503(b)(1)(A) AND/OR 503(b)(3)(D) OF THE U.S. BANKRUPTCY CODE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

To The Honorable Marvin Isgur,
Chief United States Bankruptcy Judge:

Andra Vanarsdel, Party-in-Interest and Equity Security Holder of the Debtor, files this Motion for Reimbursement of Administrative Expenses Pursuant to Sections 503(b)(1)(A) and/or 503(b)(3)(D) of the United States Bankruptcy Code ("the Motion"). In support of the Motion, Andra Vanarsdel respectfully states the following:

Exhibit 3

## JURISDICTION & VENUE

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 20 U.S.C. § 157(b)(2)(A).  The legal predicate for the relief sought is 11 U.S.C. §§ 503(b)(1)(A) and/or 503(b)(3)(D).

2.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

3.    Casing Services & Equipment, Inc. ("Casing Services" or "the Debtor") filed a petition under Chapter 11 on July 23, 2010.  Casing Services operated as a Debtor-in-Possession, and now as a Reorganized Debtor, since confirmation of its Plan of Reorganization on June 22, 2011.

4.    On July 30, 2010, the Debtor filed an *Emergency Motion for Authorization to Enter into Insurance Premium Financing Agreement [Doc. No. 15]*.  At that time, the Debtor lacked sufficient cash to pay the premiums for certain insurance policies, including workers' compensation.

5.    On August 2, 2010, this Court held a hearing on the emergency motion.  The Court therein authorized an advance from Andra Vanarsdel to the Debtor in the amount of $60,000.00 to cover the Debtor's down payment on the insurance premiums.  *See* **Exhibit A** attached hereto—financial records evidencing Debtor's receipt in DIP account of $60,000.00, wired from the account of Andra Vanarsdel.

6.    Andra Vanarsdel is an officer and director of Casing Services, and by this Motion seeks reimbursement of administrative expenses pursuant to Sections 503(b)(1)(A) and/or 503(b)(3)(D).

## RELIEF REQUESTED

7. Andra Vanarsdel, equity security holder, advanced $60,000.00 to the Debtor for a down payment on the Debtor's necessary insurance premiums. Ms. Vanarsdel requests reimbursement of this expense as an allowable administrative claim under Section 503(b)(1)(A) and/or Section 503(b)(3)(D) of the United States Bankruptcy Code.

8. Sections 503(b)(1)(A) and 503(b)(3)(D) of the Bankruptcy Code govern Ms. Vanarsdel's administrative expense claim, and provide, in relevant part:

> (b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate . . .
>
> * * *
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph 4 of this subsection incurred by –
>
> > (D) a creditor, and indenture trustee, [or] an equity security holder . . . in making a substantial contribution in a case under chapter 9 or chapter 11 of this title; . . .

11 U.S.C. §§ 503(b)(1)(A) and 503(b)(3)(D).

9. Ms. Vanarsdel's advance to the Debtor for the down payment on the insurance premiums qualifies as an actual and necessary expense incurred in "preserving" the bankruptcy estate under Section 503(b)(1)(A); the Debtor could not and cannot responsibly operate without personal property, general liability, and workers' compensation insurance coverage. In addition, Ms. Vanarsdel's loan qualifies under Section 503(b)(3)(D) as a "substantial contribution" to this case: Ms. Vanarsdel is an equity security holder of the Debtor; her contribution—$60,000.00—

was substantial; and this is a case under chapter 11 of the Bankruptcy Code. Consequently, this claim is entitled to priority administrative status under either Section 503(b)(1)(A) or Section 503(b)(3)(D), or both.

## PRAYER

For the reasons stated above, Andra Vanarsdel respectfully requests that this Court (1) enter an order, pursuant to Section 503(b)(1)(A) and/or Section 503(b)(3)(D), allowing and authorizing payment of an administrative expense claim to Andra Vanarsdel in the total amount of $60,000.00, and (2) grant such other and further relief, at law or in equity, to which Andra Vanarsdel may be justly entitled.

Respectfully submitted,

DYLEWSKI & ASSOCIATES, P.C.

By: /s/ Dennis M. Dylewski
DENNIS M. DYLEWSKI
Attorney-In-Charge
State Bar No. 06325750
Southern Dist. No. 493
J. KYLE TREADWAY
State Bar No. 24054561
Southern Dist. No. 870993
550 Westcott, Suite 220
Houston, Texas 77007
Telephone: (713) 751-0077
Facsimile: (713) 751-0080
E-mail: dmdylewski@sbcglobal.net

ATTORNEYS FOR ANDRA VANARSDEL

OF COUNSEL:

DYLEWSKI & ASSOCIATES, P.C.
550 Westcott, Suite 220
Houston, Texas 77007
Telephone: (713) 751-0077
Facsimile: (713) 751-0080

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June 2011, I served on parties in interest set out on the attached matrix either electronically or by U.S. mail.

/s/ Dennis M. Dylewski
Dennis M. Dylewski

Label Matrix for local noticing
0541-4
Case 10-36130
Southern District of Texas
Houston
Tue Jun 28 09:24:46 CDT 2011

Casing Services & Equipment, Inc.
P.O. Box 691770
Houston, TX 77269-1770

Comptroller Of Public Accounts
Office Of The Attorney General
Collections Division/Bankruptcy Section
P.O. Box 12548, Capitol Station
Austin, Tx 78711-2548

Estate of Thomas Ray Tubbs, Sr.
Britt & Catrett, P.C.
4615 SW Fwy Suite 500
Houston, TX 77027-7106

Harris County, et al
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
P.O. Box 3064
Houston, Tx 77253-3064

JPMorgan Chase
c/o Bruce J. Ruzinsky
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, TX 77010-1900

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX 77002-4499

Tubbs Shareholders
% Peggy J Lantz
6363 Woodway Dr., #910
Houston, TX 77057-1758

Unit Petroleum Company c/o Holly C. Hamm
Snow Fogel Spence LLP
2929 Allen Parkway Suite 4100
Houston, TX 77019-2185

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

AFLAC
1932 Wynnton Road
Columbus, GA 31999-1111

Access Medical Center - Tricity
P.O. Box 891860 mm02
Oklahoma City, OK 73189-1860

Airgas - HST U6833
P.O. Box 676031
Dallas, TX 75267-6031

Airgas - OK QTT31
P.O. Box 676015
Dallas, TX 75267-6015

Airgas - RTX WKU43
P.O. Box 676031
Dallas, TX 75267-6031

Airgas Southwest Inc
4312 IH 35 S
New Braunsfels, TX 78132-4940

Aldine ISD - Tax Office
14909 Aldine Westfield
Houston, TX 77032-3027

Allis-Chalmers Tubular Service
251 Rousseau Road
Youngsville, LA 70592-5252

Andra Vanarsdel
P.O. Box 691770
Houston, TX 77269-1770

Beckham County Treasurer
c/o Julia O'Neal, A.D.A.,
District Attorney's office
P.O. Box 22
Arnett, OK 73832-0022

Blue Cross Blue Shield of Texas
P.O. Box 660049
Dallas, TX 75266-0049

Bolts & Nuts Plus
P.O. Box 670606
Houston, TX 77267-0606

Bunker Steel Corporation
1225 North Loop West, Suite 770
Houston, TX 77008-1756

CI Machine
15220 Yarberry
Houston, TX 77032-2732

Chartis Inc.
Michelle A. Levitt, Authorized Represent
175 Water Street, 18th Floor
New York, NY 10038-4976

Chase Bank USA NA
PO BOX 15145
Wilmington, DE 19850-5145

Chase Card Services
P.O. Box 94014
Palatine, IL 60094-4014

Cintas First Aid & Safety - OK
45 N. E. 42nd
Oklahoma City, OK 73105-2202

Commerce and Industry Insurance
Company
c/o Mr. Christopher J. Jameson, Attorney
3890 West Northwest Highway, Suite 600
Dallas, TX 75220-5236

Comptroller of Public Accounts
c/o Office of the Attorney General
Bankruptcy - Collections Division
PO Box 12548
Austin TX 78711-2548

Connection Technology, LLC
1105 Peters Road
Harvey, LA 70058-1716

DXP-Safey International
P.O. Box 201791
Dallas, TX 75320-1791

Davis-Lynch, Inc.
P.O. Box 262326
Houston, TX 77207-2326


De Lage Landen Financial Services, Inc.
1111 Old Eagle School Road
Wayne, PA 19087-1453

De Lage Landen Financial Services, Inc.
Mark W. Stout
777 Main Street, Suite 1920
Fort Worth, Texas 76102-5354

De Lage Landen Financial Services, Inc.
P.O. Box 41602
Philadelphia, PA 19101-1602


(p)DELL FINANCIAL SERVICES
P O BOX 81577
AUSTIN TX 78708-1577

DepoTexas
13101 Northwest Freeway, Suite 210
Houston, TX 77040-6315

Devin Rental Tools, Inc.
P.O. Drawer 80859
Lafayette, LA 70598-0859


Dixie Cafe & Catering Service
2219 Perryton Parkway
Pampa, TX 79065-3522

E.W. Blue's Son's, Inc.
P.O. Box 9521
Houston, TX 77261-9521

EWRC, Inc.
P.O. Box 75149
Oklahoma City, OK 73147-0149


Eckel Manufacturing Co.
P.O. Box 1375
Odessa, TX 79760-1375

Edwards Wire and Rope
P.O. Box 75149
Oklahoma City, OK 73147-0149

Estate of Thomas Ray Tubbs, Sr.
c/o Mr. Jeffrey W. Steidley
Attorney at Law
3000 Weslayan Street, Suite 200
Houston, TX 77027-5741


Estate of Thomas Ray Tubbs, Sr.
c/o Mr. Leonard Peters
Attorney at Law
425 Spring Street
Columbus, TX 78934-2459

Estate of Thomas Ray Tubbs, Sr.
c/o Mr. William Daniel Elsom
Elsom & Murphy, L.L.P.
1800 Bering, suite 825
Houston, TX 77057-3415

EverBank Commerical Finance
10 Waterview Blvd
Parisppuny NJ 07054-1286


Everbank f/k/a Tygris Vender Finance
Dept. 1608
1700 Lincoln Street, Lower Level 3
Denver, CO 80203-4500

Express Energy Services
P.O. Box 975401
Dallas, TX 75397-5401

Fleetcor Technologies
555 E Airtex Dr
Houston, TX 77073-6099


Forum Oilfield Tech US, Inc.
P.O. Box 4346
Houston, TX 77210-4346

Fuelman
P.O. Box 105080
Atlanta, GA 30348-5080

Genuine Parts Company
P.O. Box 848033
Dallas, TX 75284-8033


Gill Services, Inc.
650 Aldine Bender
Houston, TX 77060-4599

Glen Rose Medical
P.O. Box 2099
Glen Rose, TX 76043-2099

Great Plains Regional Medical Center
P.O. Box 2339
Elk City, OK 73648-2339


Groves Industrial
7301 Pinemont Drive
Houston, TX 77040-6607

Harris County, et al
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
P.O. Box 3064
Houston, Texas 77253-3064

Harris County, et al
c/o Mr. Leo Vasquez
Tax Assessor-Collector
P.O. Box 4622
Houston, TX 77210-4622

Holloway - Houston
5833 Armour Drive
Houston, TX 77020-8195

Holloway Drilling Equipment
P.O. Box 157
Broussard, LA 70518-0157

Hydradyne Hydraulics, LLC
P.O. Box 974799
Dallas, TX 75397-4799

Industrial Specialties
P.O. Box 269049
Oklahoma City, OK 73126-9049

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
c/o United States Attorney
Southern District of Texas
P.O. Box 61129
Houston, TX 77208-1129

JPMorgan Chase Bank, N.A.
Collateral Management Small Business
P.O. Box 33035
Louisville, KY 40232-3035

JPMorgan Chase Bank, N.A.
Collateral Management Small Business
P.O. Box 4660
Houston, TX 77210-4660

JPMorgan Chase Bank, N.A.
c/o Mr. Bruce J. Ruzinsky
Jackson Walker, L.L.P.
1401 McKinney Street, Suite 1900
Houston, TX 77010-1900

JPMorgan Chase Bank, N.A.
c/o Mr. Steven VanKlompenberg,
201 N. Central Avenue, 17th Floor
Mail Code AZ1-1025
Phoenix, AZ 85004-1000

Janne Pridgeon
17439 Saddlebrush Trail
Houston, TX 77095-7022

KGM Express, Inc.
P.O. Box 840471
Houston, TX 77284-0471

Kenneth W. Pitts
c/o Moore & Associates
440 Louisiana, Suite 675
Houston, Texas 77002-1646

Knight Oil Tools, Inc.
Attn: Chris Hebert
P.O. Box 52688
Lafayett, LA 70505-2688

L&R Tire (Truck Stop)
P.O. Box 1127
Elk City, OK 73648-1127

L. Klein and Company, P.C.
1427 Keefer Road
Tomball, TX 77375-4225

Leonard Peters
Attorney at Law
425 Spring Street
Columbus, TX 78934-2459

Liberty Mutual Group
100 Liberty Way PO Box 1525
Dover, New Hampshire 03820-4597
Customer Accounting Services

Mark A. Junell/
Sander & Junell, P.C.
3900 Essex Lane, Suite 390
Houston, TX 77027-5265

Mark A. Peyton
602 Casa Linda
Ennis, TX 75119-7602

Mark E. Peyton
602 Casa Linda
Ennis, TX 75119-7602

Martin Fluid Power
6130 Westview Drive
Houston, TX 77055-5422

Masthead Hose & Supply
P.O. Box 861777
Orlando, FL 32886-1777

McCauley Lumber Co.
626 Aldine Bender
Houston, TX 77060-4598

Napa - OK
716 W. 3rd Street
Elk City, OK 73644-5208

North Houston Trailer & Truck
Supply, Inc.
14429 Aldine Westfield
Houston, TX 77039-1202

OCE Financial Services
P.O. Box 41602
Philadelphia, PA 19101-1602

OCE North America/
OCE Imagistics, Inc.
P.O. Box 856193
Louisville, KY 40285-6193

OCE North America/
OCE Imagistics, Inc.
c/o RMS
P.O. Box 523
Richfield, OH 44286-0523

Offshore Energy Services, Inc.
P.O. Box 53508
Lafayette, LA 70505-3508

Oil Center Research of OK, LLC
P.O. Box 92615
Lafayette, LA 70509-2615

Oil Center Research of Texas, LLC
P.O. Box 92615
Lafayette, LA 70509-2615

Oklahoma Employment Security
Commission
P.O. Box 52925
Oklahoma City, OK 73152-2925

Oklahoma Employment Security Commission
OESC Legal Department
P O Box 53039
Oklahoma City, OK 73152-3039

Oklahoma Tax Commission
P.O. Box 26860
Oklahoma City, OK 73126-0860

PBA Supply, Inc.
P.O. Box 11316
Odessa, TX 79760-8316

Parkview Hospital
P.O. Box 1030
Wheeler, TX 79096-1030

Pecan Creek Catering
604 N. Cook Street
Cordell, OK 73632-3402

Phillip Jay Ruiz
c/o Mr. Richard E. Ward
Attorney at Law
1220 N. Main, Suite 303
Fort Worth, TX 76164-9100

Pumpelly Oil Company, LLC
P.O. Box 2059
Sulphur, LA 70664-2059

Ram Products, Inc.
P.O. Box 821159
Fort Worth, TX 76182-1159

Shanda, L.L.P.
13603 Pegasus Road
Cypress, TX 77429-5186

Shane Tubbs
840 Aldine Bender
Houston, TX 77032-2702

Shane Tubbs
c/o Mr. William Daniel Elsom
Elsom & Murphy, L.L.P.
1800 Bering, suite 825
Houston, TX 77057-3415

Sharon Tubbs
840 Aldine Bender
Houston, TX 77032-2702

Sharon Tubbs
c/o Mr. William Daniel Elsom
Elsom & Murphy, L.L.P.
1800 Bering, suite 825
Houston, TX 77057-3415

Shawley J. Coker, Independent Administrator
The Estate of Thomas R. Tubbs Sr.
c/o Peggy J. Lantz
6363 Woodway Drive, Ste. 910
Houston, TX 77057-1758

Shell (M) Commercial/Citi Oil
P.O. Box 9010
Des Moines, IA 50368-9010

Shell (M) Commercial/Citi Oil
c/o Pro Consulting Services, Inc.
P.O. Box 66768
Houston, TX 77266-6768

Sherwin-Williams
11316 North Freeway
Houston, TX 77037-1087

Steve's Diesel & Truck Service
P.O. Box 166
Elk City, OK 73648-0166

Strackbein Machine Co., Inc.
11959 Laurel Meadow Drive
Tomball, TX 77377-8586

Subelt Industrial Trucks
1617 Terre Colony Court
Dallas, TX 75212-6222

T&W Tire
P.O. Box 974474
Dallas, TX 75397-4474

TAM International
P.O. Box 973935
Dallas, TX 75397-3935

TBS Factoring Service
P.O. Box 268827
Oklahoma City, OK 73126-8827

TC Die & Inserts
1014 Courtesy Road
Houston, TX 77032-2806

TEQSYS, Inc.
7301 Burnet Road, Suite 102-515
Austin, TX 78757-2250

TESCO Services, Inc.
P.O. Box 203408H
Houston, TX 77216-3408

TI Oilfield Tools, Inc.
13827 W. Hardy
Houston, TX 77060-5302

Teddys Glass
515 N. Van Buren
Elk City, OK 73644-4260

Teletrac, Inc.
P.O. Box 51341
Los Angeles, CA 90051-5641

Texas Comptroller of Public Accounts
111 E. 17th Street
Austin, TX 78774-0100

Texas Comptroller of Public Accounts
c/o Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548

Texas Workforce Commission
P.O. Box 149037
Austin, TX 78714-9037

Texas Workforce Commission
Regulatory Integrity Division - SAU
Room 556
101 E. 15th Street
Austin, TX 78778-0001

Texas Workforce Commission
c/o Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548

Texas international Oilfield Tools, LTD
13627 West Hardy Road
Houston TX 77060-5609

The Ace USA
Two Riverway, Suite 900
Houston, TX 77056-1940

The Ace USE
c/o RMS
P.O. Box 4647
Timonium, MD 21094-4647

The Estate of Thomas R. Tubbs Sr.
Shawley J. Coker, Independent Administra
c/o Peggy J. Lantz
6363 Woodway Drive, Ste. 910
Houston, TX 77057-1758

Thomas Ray Tubbs, Jr.
840 Aldine Bender
Houston, TX 77032-2702

Thomas Ray Tubbs, Jr.
c/o Mr. William Daniel Elsom
Elsom & Murphy, L.L.P.
1800 Bering, suite 825
Houston, TX 77057-3415

Thompson & Knight LLP
c/o Barry Davis
333 Clay, Suite 3300
Houston, TX 77002-4499

Tim's Trucking, LLC
P.O. Box 340
Elk City, OK 73648-0340

UA Healthworks
P.O. Box 404974
Atlanta, GA 30384-4974

US Healtworks Medical Group of Texas
P.O. Box 404974
Atlanta, GA 30384-4974

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Unit Petroleum Company
c/o Phil F. Snow, Snow Fogel Spence LLP
2929 Allen Parkway Suite 4100
Houston, Texas 77019-7106

Vanarsdel Family Partnership
13603 Pegasus
Cypress, TX 77429-5186

Vanarsdel Family Partnership, LTD.
PO Box 691770
Houston, Texas 77269-1770

Waste Disposal Services
P.O. Box 1148
Lexington, OK 73051-1148

Western Marketing, Inc.
P.O. Box 147
Abilene, TX 79604-0147

Andra Vanarsdel

James R. Jones
25211 Grogan's Mill Road
Ste 240
The Woodlands, TX 77380-2177

Margaret Maxwell McClure
Attorney at Law
909 Fannin
Suite 3810
Houston, TX 77010-1030

Philip Jay Ruiz

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Dell Business Credit
P.O. Box 5275
Carol Stream, IL 60197

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

(d)Internal Revenue Service
Special Procedures Branch
Insolvency Section II (7,11)
1919 Smith Street, Stop 5025HOU
Houston, TX 77002

(d)Internal Revenue Service
c/o United States Attorney General
U.S. Department of Justice
10th & Constitution, N.W.
Washington, D.C. 20530

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Casing Services & Equipment, Inc.
P.O. Box 691770
Houston, TX 77269-1770

(d)Thompson & Knight, L.L.P.
333 Clay Street, Suite 3300
Houston, TX 77002-4499

End of Label Matrix
Mailable recipients    146
Bypassed recipients      2
Total                  148